UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| RANDY EWING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-1164 |
| ) | |
| CITY OF MONMOUTH, ILLINOIS, and ) | |
| BRAD ZEIGLER, individually and in his official ) | |
| capacity as Police Chief of the City of Monmouth, ) | |
| Illinois, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the Court is a Motion to Dismiss by the City of Monmouth, Illinois (the "City"), and Brad Ziegler in his official capacity ("Chief Ziegler") [#9]. For the reasons set forth below, the Motion to Dismiss [#9] is GRANTED IN PART and DENIED IN PART.

**JURISDICTION**

This Court has jurisdiction over Plaintiff's § 1983 claims pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

Plaintiff, Randy Ewing ("Ewing"), began his employment with the City on June 15, 2000.[1] At all relevant times, he held the rank of patrolman. Chief Ziegler is the Chief of Police for the City.

During his employment, Ewing has received regular promotions, good evaluations, and pay increases. He has also received numerous commendations or awards for his performance on

---

[1] Unless otherwise indicated, the following allegations are taken from the Complaint and are presumed to be true for purposes of resolving this Motion to Dismiss.

the job and has been disciplined on three occasions. In March 2004, Ewing received a one-day suspension for disseminating confidential information to someone outside the police department. He received a two-day suspension in December 2004 after being involved in an accident with unauthorized passengers in his patrol car. On September 13, 2005, Ewing received a five-day suspension for failing to take any action on persons he knew to be under the legal age for drinking. It is this last disciplinary action that forms the basis for this case.

On or about August 14, 2005, Ewing was on duty on third shift. At approximately 3:15 a.m., he went to the residence of Officer Terry Hepner ("Officer Hepner") to visit with him during his break. At that time, Ewing noticed four female individuals, some of whom were consuming alcohol with Officers Hepner and Brian Hall. Ewing did not know the precise age of these females. One or more of these females (who turned out to be underage) apparently took pictures as Ewing visited the residence and subsequently posted these pictures around town. The pictures resulted in the State's Attorney requesting an investigation by the Illinois State Police.

Ewing voluntarily participated in an interview with the State Police, during which he answered all questions and described the incident that had occurred on August 14, 2005. He further described an incident that had occurred while he was on duty at approximately 6:00 p.m. on September 7, 2005. Ewing arrived at a residence at 1143 E. Broadway in Monmouth, at which time he observed Chief Zeigler and Officer Hepner nearby as they appeared to be arguing and pointing to the front porch area of the residence. Ewing looked in the direction they were pointing and observed Jena Randolph ("Randolph"), a female under the age of 21, standing on the front porch with City of Monmouth Administrator Shannon Thompson ("Thompson") and drinking beer. Chief Zeigler informed Thompson that Randolph was one of the underage girls

involved in the August 14, 2005, incident and advised her to leave the premises so that she would not be around underage drinking activity. Before leaving the scene, Thompson directed Ewing not to go into the residence because underage drinking was taking place. Ewing relayed his observations to Chief Zeigler in a meeting approximately two days later and indicated that he did not believe that the incident should have been covered up. Chief Zeigler advised him that no further comment was to be made about the incident.

On May 30, 2006, Chief Zeigler advised Ewing that he was seeking his dismissal for reasons described in correspondence bearing the same date. The Complaint does not indicate what action was taken in response to Chief Zeigler's recommendation, whether the termination recommendation was approved, or whether he was subsequently terminated after the termination recommendation was approved by the Monmouth Board of Fire and Police Commissioners (the "Board"). However, the May 30, 2006, letter indicates that Ewing's attorney had indicated that he would elect to have the charges heard by an arbitrator rather than the Board pursuant to the collective bargaining agreement ("CBA"), and that Ewing was placed on unpaid leave pending the results of a hearing.

On June 27, 2006, Ewing filed the present Complaint alleging that the Defendants' conduct deprived him due process of law (Count I), violated his First Amendment rights (Count II), and resulted in a denial of equal protection (Count III). Defendants have now moved to dismiss Counts I and III of the Complaint, and this Order follows.

**DISCUSSION**

A complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *See*

Conley v. Gibson, 355 U.S. 41 (1957); Gould v. Artisoft, Inc., 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rule of Civil Procedure 8(f).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff.  See Albright v. Oliver, 510 U.S. 266, 268 (1994); Hishon v. King & Spalding, 467 U.S. 69 (1984); Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997); M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 969 (7th Cir. 1995); Early v. Bankers Life & Cas. Co., 959 F.2d 75 (7th Cir. 1992).

Section 1983 imposes liability where a defendant acts under color of a state law and the defendant's conduct violated the plaintiff's rights under the Constitution or laws of the United States. 42 U.S.C. § 1983. To establish a cause of action under § 1983, the plaintiff must allege (1) that the defendant has deprived him of a federal right, and (2) that the defendant acted under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). In reviewing the complaint on a motion to dismiss, the plaintiff is only required to set forth these elements in a short plain statement showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2); Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001).

    I.    Due Process Claims

Defendants first argue that Ewing has failed to state a claim for violation of his right to due process.  In order to establish that his due process rights were violated, a plaintiff must demonstrate:  (1) that the defendant deprived him of a constitutionally protected liberty or

property interest, and (2) that the deprivation was without sufficient procedural protections. Galdikas v. Fagan, 342 F.3d 684, 691 (7th Cir. 2003); Williams v. Seniff, 342 F.3d 744, 786-87 (7th Cir. 2003); Polenz v. Parrott, 883 F.2d 551, 555 (7th Cir. 1989). Generally, due process requires some kind of pre-termination hearing prior to the discharge of the employee, as well as adequate post-deprivation remedies. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 540 (1985); Veterans Legal Defense Fund v. Schwartz, 330 F.3d 937, 941 (7th Cir. 2003).

For purposes of resolving this Motion, Defendants assume that Ewing has a protectable property right in his continued employment. That being said, Defendants contend that he has failed to demonstrate either that he has suffered a deprivation or that any deprivation was without due process of law, as Ewing has elected to particulate in a pre-termination hearing wherein the charges are considered by an arbitrator pursuant to the CBA, providing him with an opportunity to present evidence refuting the allegations made against him, and this hearing has not yet been held.

Ewing responds that because the remedies presented to him via arbitration do not include the remedies provided by § 1983, his claims are "procedurally and substantially different than his claims under arbitration" and therefore "cannot be premature." With all due respect, Ewing's response misses the point. The Complaint alleges nothing more than that his termination has been recommended. The exhibits to the Complaint further indicate that at Ewing's request, the decision on whether or not to approve Chief Zeigler's recommendation has been referred from the Board to a pre-deprivation hearing before an arbitrator and that this hearing has not yet been held.

In Stachowski v. Town of Cicero, 425 F.3d 1075, 1078 (7th Cir. 2005), the Court of Appeals recognized that the decision of the governing board adopting the request to terminate the employee is the final decision necessary to form the basis for a due process claim. Here, the CBA affords the employee the choice between having the decision made by the Board or by an independent arbitrator, and Ewing elected to proceed before an arbitrator. As the hearing before the arbitrator has not yet been held, it is clear that no final decision has been made in this case. Accordingly, even drawing all reasonable inferences in favor of Ewing, he has not alleged that he has suffered any deprivation without due process of law, much less that the existing post-termination remedies available to him are inadequate. Accordingly, Defendants' Motion to Dismiss the procedural due process claim will be granted without prejudice to refiling the claim once a final decision has been made regarding his termination.

To the extent that Ewing has also alleged a claim for deprivation of substantive due process, Defendants maintain that any property interests that he possesses are not protected. Substantive due process involves the exercise of governmental power without reasonable justification and the "protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974); Dunn v. Fairfield Community High School, District No. 225, 158 F.3d 962, 965 (7th Cir.1998). The Court notes that "[t]he scope of substantive due process, however, is very limited and protects plaintiffs only against arbitrary government action that 'shocks the conscience.'" Montgomery v. Stefaniak, 410 F.3d 933, 939 (7th Cir. 2005), *citing* Tun v. Whitticker, 398 F.3d 899, 902 (7th Cir. 2005); Washington v. Glucksberg, 521 U.S. 702 (1997).

Defendants argue that property interests in continued employment fall outside the narrow scope of protection afforded by substantive due process. Ewing responds that his claim is based on the underlying rules and regulations adopted by the Board, which permit discharge "so long as the procedures are in compliance with Act 5, Article 10, Division 1, Sections 10.1.18 and 10.1.18.1 of Chapter 65 of the Illinois Compiled Statutes."

The Supreme Court has identified two controlling features of substantive due process:

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest. Our Nation's history, legal traditions, and practices thus provide the crucial guideposts for responsible decision-making that direct and restrain our exposition of the Due Process Clause.

Galdikas, 342 F.3d at 688, *citing* Glucksberg, 521 U.S. at 720-21. Although Ewing's Complaint is far from a model of clarity, it appears that he is alleging that Chief Zeigler's fabrication of charges against him violated his contractual right to continued employment under the rules and regulations.

Seventh Circuit precedent indicates that when a substantive due process claim is predicated on a deprivation of a state created property interest, a plaintiff must show: "(1) that the state actor's conduct was arbitrary and irrational, and (2) that the state actor committed a separate constitutional violation or that state law remedies are inadequate." Galdikas, 342 F.3d at 691, *citing* Contreras v. City of Chicago, 119 F.3d 1286, 1295 (7th Cir. 1997). Assuming arguendo that Defendants acted arbitrarily and irrationally, Ewing's claim must still fail because he has not alleged a separate constitutional violation. *See* Montgomery, 410 F.3d at 939 (finding

that allegations of wrongful termination of employment alone do not "shock the conscience" and are insufficient to state a substantive due process claim.)  Nor has he alleged that the remedies provided under state law are inadequate.  Indeed, it would appear that he is currently in the process of availing himself of the remedies provided under the CBA, which will then give rise to a final decision that can be appealed pursuant to the Illinois Administrative Review Act.  *See* Stachowski, 425 F.3d at 1078.  Thus, Defendants are entitled to the dismissal of the substantive due process claim, as well.

    II.    Equal Protection Claim

Defendants next challenge Ewing's ability to state an equal protection claim based on his "class of one" theory.  In a traditional equal protection claim, a plaintiff must demonstrate that: (1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent.  Greer v. Amesqua, 212 F.3d 358, 370 (7th Cir. 2000).  The Seventh Circuit also recognizes equal protection claims brought by a "class of one" when: (1) the plaintiff alleges that he has been intentionally treated differently from others similarly situated and; (2) there is no rational basis for the difference in treatment or the defendant was motivated by discriminatory animus.  McDonald v. Village of Winnetka, 371 F.3d 992, 1001 (7th Cir. 2004); Purze v. Village of Winthrop Harbor, 286 F.3d 452, 454-55 (7th Cir. 2002); Stachowski, 425 F.3d at 1078-79.

Defendants argue that while Ewing has alleged that he has been intentionally treated differently, he has not adequately alleged that he is similarly situated to Officers Hepner and Hall.  A review of the Complaint reveals that while he may not have used the magic words

"similarly situated," reasonable inferences drawn from the facts alleged are sufficient to place Defendants on notice that he is in fact offering these other officers as others similarly situated. Defendants real complaint seems to be that in actuality, these officers are not similarly situated. However, that requires a factual analysis that is inappropriate at this stage of the litigation. Although Ewing's ability to succeed on this claim is far from clear, the Court finds that his equal protection claim must be resolved on a more complete record after the close of discovery. Defendants' Motion to Dismiss is therefore denied in this respect.

## CONCLUSION

For the above reasons, the Motion to Dismiss [#9] is GRANTED IN PART and DENIED IN PART. The due process claims alleged in Count I of the Complaint are DISMISSED WITHOUT PREJUDICE to being re-filed at an appropriate time once a final decision has been issued with respect to Ewing's termination. This matter is referred to Magistrate Judge Gorman for further proceedings.

ENTERED this 5th day of September, 2006.

                                                     s/ Michael M. Mihm
                                                    Michael M. Mihm
                                                    United States District Judge