E-FILED
Wednesday, 18 July, 2007  03:38:15 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| RANDY EWING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-1164 |
| | ) |
| CITY OF MONMOUTH, ILLINOIS, and | ) |
| BRAD ZEIGLER, individually and in his official | ) |
| capacity as Police Chief of the City of Monmouth, | ) |
| Illinois, | ) |
| | ) |
| Defendants. | ) |

### ORDER

Before the Court is a Motion to Dismiss by the City of Monmouth, Illinois (the "City"), and Brad Ziegler in his official capacity ("Chief Ziegler") [#27]. For the reasons set forth below, the Motion to Dismiss [#27] is GRANTED.

### JURISDICTION

This Court has jurisdiction over Plaintiff's § 1983 claims pursuant to 28 U.S.C. § 1331.

### BACKGROUND

Plaintiff, Randy Ewing ("Ewing"), began his employment with the City on June 15, 2000.[1] At all relevant times, he held the rank of patrolman. Chief Ziegler is the Chief of Police for the City.

During his employment, Ewing has received regular promotions, good evaluations, and pay increases. He has also received numerous commendations or awards for his performance on the job and has been disciplined on three occasions. In March 2004, Ewing received a one-day suspension

---

[1] Unless otherwise indicated, the following allegations are taken from the Amended Complaint and are presumed to be true for purposes of resolving this Motion to Dismiss.

for disseminating confidential information to someone outside the police department.  He received a two-day suspension in December 2004 after being involved in an accident with unauthorized passengers in his patrol car. On September 13, 2005, Ewing received a five-day suspension for failing to take any action on persons he knew to be under the legal age for drinking.  It is this last disciplinary action that forms the basis for this case.

On or about August 14, 2005, Ewing was on duty on third shift.  At approximately 3:15 a.m., he went to the residence of Officer Terry Hepner ("Officer Hepner") to visit with him during his break.  At that time, Ewing noticed four female individuals, some of whom were consuming alcohol with Officers Hepner and Brian Hall.  Ewing did not know the precise age of these females.  One or more of these females (who turned out to be underage) apparently took pictures as Ewing visited the residence and subsequently posted these pictures around town.  The pictures resulted in the State's Attorney requesting an investigation by the Illinois State Police.

Ewing voluntarily participated in an interview with the State Police, during which he answered all questions and described the incident that had occurred on August 14, 2005.  He further described an incident that had occurred while he was on duty at approximately 6:00 p.m. on September 7, 2005.  Ewing arrived at a residence at 1143 E. Broadway in Monmouth, at which time he observed Chief Zeigler and Officer Hepner nearby as they appeared to be arguing and pointing to the front porch area of the residence.  Ewing looked in the direction they were pointing and observed Jena Randolph ("Randolph"), a female under the age of 21, standing on the front porch with City of Monmouth Administrator Shannon Thompson ("Thompson") and drinking beer.  Chief Zeigler informed Thompson that Randolph was one of the underage girls involved in the August 14, 2005, incident and advised her to leave the premises so that she would not be around underage

2

drinking activity.  Before leaving the scene, Thompson directed Ewing not to go into the residence because underage drinking was taking place.  Ewing relayed his observations to Chief Zeigler in a meeting approximately two days later and indicated that he did not believe that the incident should have been covered up.  Chief Zeigler advised him that no further comment was to be made about the incident.

On May 30, 2006, Chief Zeigler advised Ewing that he was seeking his dismissal for reasons described in correspondence bearing the same date.  Ewing elected to have the charges heard by an arbitrator rather than the Board pursuant to the collective bargaining agreement ("CBA") and was placed on unpaid leave pending the results of a hearing.  On January 15, 2007, the Arbitrator issued his decision finding that there had been just cause for Ewing's discharge and denying his grievance.

On June 27, 2006, Ewing brought this suit alleging that the Defendants' conduct deprived him due process of law (Count I), violated his First Amendment rights (Count II), and resulted in a denial of equal protection (Count III).  Defendants previously moved to dismiss Counts I and III of the Complaint.  Their motion was granted with respect to Count I only, and Ewing filed an Amended Complaint.  Defendants have answered Count III and filed another Motion to Dismiss with respect to Count I.  The matter is now fully briefed, and this Order follows.

## DISCUSSION

A complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief.  *See* Conley v. Gibson, 355 U.S. 41 (1957); Gould v. Artisoft, Inc., 1 F.3d 544, 548 (7th Cir. 1993).  Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rule of Civil Procedure 8(f).

3

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff.  *See* Albright v. Oliver, 510 U.S. 266, 268 (1994); Hishon v. King & Spalding, 467 U.S. 69 (1984); Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997); M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 969 (7th Cir. 1995); Early v. Bankers Life & Cas. Co., 959 F.2d 75 (7th Cir. 1992).

Section 1983 imposes liability where a defendant acts under color of a state law and the defendant's conduct violated the plaintiff's rights under the Constitution or laws of the United States. 42 U.S.C. § 1983. To establish a cause of action under § 1983, the plaintiff must allege (1) that the defendant has deprived him of a federal right, and (2) that the defendant acted under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). In reviewing the complaint on a motion to dismiss, the plaintiff is only required to set forth these elements in a short plain statement showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2); Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001).

Defendants again argue that Ewing has failed to state a claim for violation of his right to procedural due process.  In order to establish that his due process rights were violated, a plaintiff must demonstrate:  (1) that the defendant deprived him of a constitutionally protected liberty or property interest, and (2) that the deprivation was without sufficient procedural protections. Galdikas v. Fagan, 342 F.3d 684, 691 (7th Cir. 2003); Williams v. Seniff, 342 F.3d 744, 786-87 (7th Cir. 2003); Polenz v. Parrott, 883 F.2d 551, 555 (7th Cir. 1989).  Generally, due process requires some kind of pre-termination hearing prior to the discharge of the employee, as well as adequate

post-deprivation remedies.  <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 540 (1985); <u>Veterans Legal Defense Fund v. Schwartz</u>, 330 F.3d 937, 941 (7th Cir. 2003).

As amended, Ewing's procedural due process claim alleges that the decision of the Arbitrator upholding his discharge resulted in a due process violation.  Specifically, he contends:  (1) the Arbitrator considered and cited as the sole basis for upholding his discharge a five-year- old allegation that he had purchased alcohol for minors, when the allegation had been previously investigated and dealt with by a prior police chief; (2) the Arbitrator considered and alluded to case law from other jurisdictions rather than applying the law of the State of Illinois; (3) the Arbitrator's decision violated Section 17.2 of the CBA, which provides that "Discipline shall be imposed as soon as practical after the employer learns of the occurrence giving rise to the need for disciplinary action"; (4) the Arbitrator's decision violated Section 17.3 of the CBA, which provides that verbal and written reprimands are to be removed from the employee's personnel file after 12 months from the date of issue; and (5) the third specification in the notice of departmental violation failed to specify that Defendants were alleging two different occurrences in 2001, thereby denying Ewing a fair hearing and the ability to prepare a proper defense to each charge.

For purposes of resolving this Motion, Defendants assume that Ewing has a protectable property right in his continued employment.  That being said, Defendants contend that Ewing is essentially attempting to appeal the third-party Arbitrator's decision under the guise of a due process claim.  "Section 1983 creates a cause of action based upon personal liability and predicated upon fault.  An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation."  <u>Papapetropoulous v. Milwaukee Transport Services, Inc.</u>, 795 F.2d 591, 595 (7th Cir. 1986), <i>citing</i> <u>Wolf-Lillie v. Sonquist</u>, 699 F.2d 864, 869 (7th Cir. 1983).  Here,

Ewings' claim is predicated on the actions and findings of the independent Arbitrator, who is not a party to this litigation and with respect to whom the record provides no indication of state actor status. The record is likewise devoid of any evidence that could support the reasonable inference that the Arbitrator was not independent and neutral; Ewing's bald speculation based on his disagreement with the outcome is utterly insufficient to make such a showing.

Defendants complied with their obligation to Ewing and his union under § 12.5 of the CBA. They requested a panel of seven recognized arbitrators from the Federal Mediation and Conciliation Service. The parties then alternately struck one name from the list until only one name remained, and that individual became the Arbitrator. The Arbitrator held a hearing, took evidence, and issued his decision, which under § 12.5 is "final and binding on the Employer, the Council and the employee(s) involved." The independent Arbitrator, not the Defendants, then made the decisions and took the actions that allegedly deprived Ewing of his due process rights. Accordingly, much like the Seventh Circuit in Papapetropoulous, the Court is "at a loss to understand how the plaintiff can argue that [Defendants are] the party responsible in a section 1983 action for the decisions of the independent arbitrator." 795 F.2d at 596.

Ewing has drafted his Amended Complaint against his former employer, but his due process claim actually alleges that the procedures implemented by the independent Arbitrator denied him due process. Any challenge to the Arbitrator's decision is governed by 9 U.S.C. § 10, which vests courts with authority to vacate an arbitrator's award upon application by either a party to the arbitration or a third-party who is adversely affected or aggrieved by the award. Id. Thus, the Court must conclude that the § 1983 claim for due process violations set forth in Count I of the Amended Complaint fails to state a claim upon which relief could be granted.

Moreover, even assuming that Ewing's due process allegations asserted a claim against a proper party, he has failed to properly plead a constitutional violation. The Seventh Circuit has held that "grievance procedures created by collective bargaining agreements can satisfy the requirement of due process." Chaney v. Suburban Bus Division of the Regional Transportation Authority, 52 F.3d 623, 628 (7th Cir. 1995), citing Cushing v. City of Chicago, 3 F.3d 1156, 1161 (7th Cir. 1993); Wallace v. Tilley, 41 F.3d 296, 302 (7th Cir. 1994). Due Process requires pre-termination notice and an opportunity to respond. Id., at 629.

Here, it is undisputed that Ewing received notice of the grounds for his discharge in the form of the May 30, 2006, correspondence from Chief Ziegler. The CBA also afforded Ewing a full opportunity to be heard prior to termination in the form of either a hearing before the Monmouth Board of Fire and Police Commissioners or a hearing before an independent arbitrator. Ewing chose the latter and the charges were heard by a neutral arbitrator selected by the procedures set forth in the CBA. The May 30, 2006, letter clearly identified the purchase and/or provision of alcohol to minors in the fall of 2001 as one of the bases for his discharge. It is also clear that Ewing had an opportunity to respond to the charges and present evidence, as he was represented by counsel for the union, who acted on his behalf in attacking the grounds for discharge and cross-examining Defendants' witnesses. Ewing testified, and the Union vigorously challenged the asserted bases for his discharge. The fact that he ultimately disagrees with the outcome does not negate the sufficiency of the process that he was afforded. Accordingly, the Court must conclude that even when construed in the light most favorable to Ewing, he could prove no set of facts in support of his due process

claim which would entitle him to relief, and Defendants would also be entitled to the dismissal of Count I of the Amended Complaint for this reason.[2]

## CONCLUSION

For the above reasons, the Motion to Dismiss [#27] is GRANTED, and Count I of the Amended Complaint is DISMISSED.  The remainder of this matter is referred to Magistrate Judge Gorman for further proceedings.

ENTERED this 18th day of July, 2007.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge

---

[2] Although far from a model of clarity, the Amended Complaint does not appear to allege a substantive due process claim.  However, to the extent that Ewing intended to assert such a claim, the Court must conclude that he has still failed to state a claim upon which relief can be granted for the reasons set forth in the Court's September 5, 2006, Order granting the dismissal of Count I of the Complaint for failure to state a claim.